(No. 43330.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
TOM GLOVER, Appellant.

*Opinion filed June 24, 1971.—Rehearing denied October 4, 1971.*

J. DANIEL KING, of KING & McNAMARA, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and PHILIP G. REINHARD, State's Attorney, of Rockford, (THOMAS J. IMMEL and FRED G. LEACH, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Tom Glover, was convicted by a jury in the circuit court of Winnebago County of the offense of deviate sexual assault and sentenced to not less than 6 nor more than 12 years in the penitentiary. Alleging that constitutional issues are involved, defendant appeals directly to this court. Ill. Rev. Stat. ch. 110A, par. 603.

The complaining witness testified that on September 2, 1969, she was employed as a dancer at a tavern in Rockford. She left the tavern shortly after 1:00 A.M. on September 3 and proceeded to walk north on 7th Street. Her destination was an all-night restaurant where she frequently went after leaving work, and which was located several blocks north of the tavern. She saw a man, whom she later identified as the defendant, standing on the first corner north of the tavern. After she passed him, he followed her. As she approached an alley situated approximately one-half block north of the corner, the man grabbed her and pulled

her into the alley. In this half block there were several lights on the buildings in addition to the street lights. The night was clear and the moon bright. The witness had twice glanced over her shoulder at the man following her before he pulled her into the alley.

In the alley defendant attempted to pull complainant's panties off but was unsuccessful. He then pushed her against a building, grabbed her purse, and searched through it. Not finding any money, he forced her to perform an act of oral copulation upon him. During this time he held an open pocket knife in his right hand and threatened to kill her if she made any sound. The entire incident took 10 to 15 minutes. When he left, he threatened her life if she went to the police.

The witness then ran on to the restaurant where she told several male friends what had happened. They drove around the block to see if they could find the assailant. Failing this, they returned to the restaurant. At eight o'clock that same morning the complainant first notified the Rockford police and at that time told them only of the attempted robbery. She described her assailant as a thirty-five-year-old Negro male, 5'8" in height and 250 pounds in weight. She also described the manner in which he was dressed—striped shirt, black pants, dark work shoes and tan straw hat with white band.

The next day the complainant appeared at a line-up and identified defendant. He was in the line-up with three other Negro males, ranging in ages from 18 to 34 years, in weight from 142 pounds to 147 pounds, and in height from 5'9" to 6 feet. None of the four wore clothing similar to that allegedly worn by the assailant at the time of the occurrence, and two had either thin moustaches or chin whiskers. A photograph of the line-up was introduced into evidence. The defendant's age was 59, he was 5'9" tall and weighed 190 pounds.

Defendant's hat, identified as the one worn by the assailant, and a pocket knife in his possession at the time of his arrest, were also admitted into evidence.

The defense called several witnesses who testified that the complainant's reputation for truth and veracity was bad. Some of these witnesses were women who worked with complainant. They also testified she had told them a man tried to rob her but said nothing about the deviate sexual assault. A doctor who examined defendant testified that because of an old injury he had a limited loss of function to his right hand which would make it difficult for him to hold a knife.

Defendant contends that as the result of the trial court's rulings on several motions he was denied due process and equal protection of the law. We shall first consider defendant's motions in which he moved for an order to require the alleged victim of the assault to submit to a psychiatric examination and an examination by an ophthalmologist. In the motion seeking the psychiatric examination he states that in her first report to the police, made a number of hours after the occurrence, she furnished them with a description of her assailant that did not "favorably compare with defendant," that she reported only an attempted robbery and made no mention of a sexual assault, and that she has a history of "emotional instability and immaturity." In the second motion he alleges that she was the only eyewitness, it was dark at the time of the assault and the examination was necessary to determine her ability to see and identify the defendant.

In support of his contentions defendant cites *People* v. *Porcaro,* 6 N.Y.2d 248. In that case a 10-year-old witness testified that the defendant had sexual intercourse with her over a period of 4 years. The court held that the result of a medical examination made shortly after the child's first complaint was material to the issues because, assuming, as

alleged by the defendant, the examination showed an unbroken hymen, her physical condition was material to the issues.

There is impressive support for defendant's argument that the complaining witness should have been ordered to undergo a psychiatric examination. See Wigmore on Evidence, vol. IIIA, sec. 924a, and authorities there cited and discussed.

There is no question of the court's jurisdiction to order an examination of the complaining witness in a case involving a sex violation (*People ex rel. Noren* v. *Dempsey,* 10 Ill.2d 288) and it may, in the exercise of its discretion, do so when the defendant presents a compelling reason therefor. Upon examination of this record we are unable to say that the trial court, in denying the motion, abused its discretion.

With respect to the ophthalmological examination, although the court had jurisdiction to order it, the record reflects no compelling reason therefor and the denial of the motion was not an abuse of discretion.

As further grounds for reversal defendant contends the trial court erred in denying his motion "for the use of a court reporter to assist defense counsel in obtaining statements from prosecution witnesses." He argues that a more affluent defendant would be able to pay for the services of a qualified stenographer to assist his counsel in obtaining statements of witnesses. He contends that a stenographic transcript of a statement is the only means to make certain that a witness, unwilling to sign a handwritten statement, does not deny what he told counsel.

While a denial of expenses to an indigent for securing certain expert services in defense of criminal charges may deprive the accused of constitutional protection in certain circumstances (*People* v. *Watson,* 36 Ill.2d 228), there must be some showing that this is necessary to prove a crucial issue in the case and that the lack of funds for the

expert will therefore prejudice defendant. (*People ex rel. Douglas* v. *Woods*, 39 Ill.2d 381.) There has been no showing here that defense counsel attempted to secure statements from prosecution witnesses who refused to sign, and no showing that he was in any manner prejudiced by the denial of the motion.

The next issue presented arises from the trial court's denial of defendant's motion for an order directed to the Rockford police department "Requiring Knowledgeable Officers and Personnel to Confer With Defense Counsel Prior to Trial." The motion states that defense counsel, upon being furnished a list of witnesses containing the names of Rockford police officers, sought to interview them. While he was talking with the police officers the interview was interrupted by the chief of police who informed counsel that it was "his policy and the policy of the Rockford Police Department that police officers would not be permitted to discuss their knowledge of any cases with defense counsel prior to trial" and any future attempts to discuss the case with the police officers would be futile because the officers would be instructed not to discuss the case.

We said in *People* v. *Speck*, 41 Ill.2d 177, at page 200, "A witness is not the property of either party to a suit * * *." A police officer, as well as a State's Attorney, has a duty to protect the innocent, and should within reasonable limits with respect of time and place be available for interview by defense counsel, and the trial court should have so ordered. We have reviewed the testimony of the officers and in view of the limited subject matter of their testimony and defendant's access to the information through other sources we hold that the denial of the motion did not result in prejudicial error.

Defendant's next assignment of error arises from a ruling of the trial court made during the hearing on defendant's pretrial motion to "Suppress Identification of Defendant at Line-Up and any Subsequent Identification By

the Alleged Victim * * *." During the hearing defendant moved that the State's Attorney be ordered to produce for inspection and use in cross-examination certain police reports and any statements the complaining witness had given the police. The State's Attorney stated that she had given the police a written statement but argued to the court that it contained nothing material to the motion to suppress. The court examined the statement, found it was not relevant for purposes of the motion and refused to permit defense counsel to use it. The court's action satisfies the requirements of *People* v. *Wolff,* 19 Ill.2d 318. The record shows that during the trial defendant was given the statement in question and decided against using it in cross-examination. Under the circumstances the court did not err in its ruling.

We have reviewed defendant's remaining contentions with respect to the line-up and have examined the testimony of the witnesses present and the photograph taken of the line-up at the time of the identification. We do not find any basis for holding that it did not meet the requirements of *Gilbert* v. *State of California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951. Defendant waived the right to have counsel present (*United States* v. *Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926), and there is ample evidence that the complaining witness's identification was based on her observation of the defendant at the scene of the offense and was independent of her viewing him in the line-up.

Finally, defendant contends that the evidence failed to prove him guilty beyond a reasonable doubt. It is axiomatic that it is the function of the trier of the facts to determine the credibility of the witnesses, and its finding of guilty will be disturbed only when the evidence is so unsatisfactory as to leave a reasonable doubt as to defendant's guilt. Moreover, the testimony of a single witness, if it is positive and the witness credible, is sufficient to convict, even though the

testimony is contradicted by the accused. (*People* v. *May*, 46 Ill.2d 120; *People* v. *Morehead*, 45 Ill.2d 326; *People* v. *Hampton*, 44 Ill.2d 41.) The testimony of the complaining witness was sufficiently consistent throughout both the pretrial hearing and the trial to sustain defendant's conviction. Such discrepancies as appeared during cross-examination and the attacks by the defense upon her character were factors to be considered by the jury, which obviously saw fit to reject them. The evidence was sufficient to sustain the conviction and the judgment of the circuit court of Winnebago County is affirmed.

*Judgment affirmed.*