THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLAIR E. VISGAR, Defendant-Appellant.

Second District No. 82—314

Opinion filed December 20, 1983.

G. Joseph Weller and John J. Barrett, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko,, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Clair E. Visgar, was charged by information with one count of indecent liberties with a child based on lewd fondling (Ill. Rev. Stat. 1979, ch. 38, par. 11—4(a)(3)) and, in an amended information, with a second count of the same offense based on sexual intercourse (Ill. Rev. Stat. 1979, ch. 38, par. 11—4(a)(1)). He was found guilty of both counts after a jury trial in the circuit court of Winnebago County, judgment was entered on both counts, and he was sentenced to four years' imprisonment. On appeal, he claims certain errors occurred with regard to discovery, evidence, and argument of counsel. We affirm.

The trial centered on the allegations of defendant's minor daughter that her father lewdly fondled her and had sexual intercourse with her in their South Beloit home on the night of July 16, 1980. We shall recite the evidence adduced at trial and the procedural history of this case only as is necessary for the disposition of the issues raised.

I

Defendant first contends that the trial court erred in denying his motion to have the complainant examined by a medical doctor. He argues that because such a physical examination would have revealed whether the complainant's hymen was intact, it was highly relevant to the credibility of her allegation that defendant had had intercourse

with her.

■ The State maintains that the trial court may have been powerless to order a physical examination. The supreme court in *People v. Glover* (1971), 49 Ill. 2d 78, 82, held that "[t]here is no question of the [trial] court's jurisdiction to order an examination of the complaining witness in a case involving a sex violation ***." The State points out that the case relied upon by the *Glover* court for that proposition, *People ex rel. Noren v. Dempsey* (1957), 10 Ill. 2d 288, involved a plaintiff in a civil case, not a complainant in a criminal case. However, the proposition was stated unequivocally in *Glover* and has been restated without question by the supreme court in *People v. Rossi* (1972), 52 Ill. 2d 13, and numerous times by the appellate court (see, *e.g., People v. Davis* (1981), 97 Ill. App. 3d 299, 422 N.E.2d 989; *People v. Dentley* (1975), 31 Ill. App. 3d 679, 334 N.E.2d 774). The State further points out that *Rossi* and *Dentley* involved psychiatric rather than physical examinations. However, involved in *Dempsey* was a physical examination, in *Glover* both a psychiatric and an ophthalmological examination, and in *Davis* both a psychiatric and a fingerprint examination of the complainant. Moreover, the State provides no reason to distinguish between psychiatric and physical examinations of the complainant with regard to a trial court's jurisdiction to order one. Thus, we conclude that a trial court has jurisdiction to order a physical examination of a complaining witness in a case involving a sex offense.

Apart from jurisdiction to order a physical examination, both parties acknowledge that a trial court's discretion to order such an examination of the complainant in a sex offense case is grounded upon the defendant's presentation of a compelling reason to do so. (*People v. Glover* (1971), 49 Ill. 2d 78.) Defendant argues that his compelling reason is to determine whether the complainant's hymen was intact.

■ However, as the State points out, such a determination would have been irrelevant to the charge against defendant as it read at the time of defendant's motion. At the time of defendant's motion, he was charged only with having "lewdly fondled or touched" the complainant. Where there is no allegation that a complaining witness was injured or that any penetration had been made into her vagina, a doctor's examination of the witness would not be necessary for any purpose. (*People v. Woods* (1973), 13 Ill. App. 3d 860, 301 N.E.2d 593.) Although the information was later amended to include a count alleging intercourse, the motion was not renewed. Because the trial court was not presented a compelling reason to order a physical examination of the complainant, it did not err in denying defendant's motion.

## II

Defendant claims that there was a violation of discovery rules with regard to a physical examination of the complainant which at trial she acknowledged had taken place. He contends that the State should have disclosed that examination before trial and that the trial court should have disclosed it after its *in camera* inspection of the file of the Department of Children and Family Services (DCFS) on the complainant.

Upon cross-examination of the complainant at trial, she indicated that she had been examined by a doctor concerning the subject accusations when she went into foster care. She stated that a Pap smear was involved. This was the only indication anywhere in the original record of a physical examination of the complainant. Although defendant's pretrial motion for discovery included a request for the results of any physical or mental examinations made in connection with this case, no such results were provided, as the State indicated that none existed.

Defendant also served a *subpoena duces tecum* upon DCFS, requesting all of its records of the complainant. After the State moved to quash the subpoena on the basis of confidentiality (see Ill. Rev. Stat. 1981, ch. 23, par. 2061), the trial court examined the DCFS file *in camera* and declined to disclose its contents to defendant on the basis of confidentiality and that defendant already had information on the matters of interest to him. Although the trial court refused to make the DCFS file part of the record, we granted defendant's motion, pursuant to Supreme Court Rule 415(f) (87 Ill. 2d R. 415(f)), for an order compelling the Winnebago County circuit court to produce the DCFS file for this court's inspection.

Upon thorough examination of the DCFS file, we find only two short references to any gynecological examination conducted upon the complainant which might possibly have been made in connection with this particular case. Both references are dated July 29, 1980, seven days after DCFS entered the case and 13 days after the incident. Both references were purportedly written by William Frank of DCFS. In the first reference, it is stated that the complainant was transported to the Winnebago County Health Department for a pelvic examination. A pregnancy test was negative and a Wassermann (venereal disease) test was conducted with results expected in two weeks. In the second reference, Frank notes only that he has conferred with the person who transported the complainant for a physical examination and that testing for VD was included, for which results would be in in about two weeks. No other information about that examination

can be found and the results of the Wassermann test, if received, are not included in the DCFS file.

Disclosures to the accused in criminal cases are governed by Supreme Court Rule 412 (87 Ill. 2d R. 412). That rule provides in pertinent part as follows:

"(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

* * *

(iv) any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations ***." (87 Ill. 2d R. 412.)

The State's duty of disclosure under this rule is a continuing one, requiring prompt notification of the defendant of the discovery of any additional material or information, up to and during trial. (87 Ill. 2d R. 415(b); *People v. Watson* (1979), 76 Ill. App. 3d 931, 395 N.E.2d 682.) However, the State cannot be accused of withholding evidence where neither the State nor its agents are in possession of the evidence. *People v. Molsby* (1978), 66 Ill. App. 3d 647, 383 N.E.2d 1336; *People v. Gaitor* (1977), 49 Ill. App. 3d 449, 364 N.E.2d 484.

■ With regard to the State's failure to disclose the results of the complainant's physical examination, the appropriate sanction for failure to comply with discovery rules is not necessarily a new trial, but may be an order of compliance, a continuance, exclusion of the evidence, or other order which the trial court deems just under the circumstances. (87 Ill. 2d R. 415(g)(i); *People v. Watson* (1979), 76 Ill. App. 3d 931, 395 N.E.2d 682.) The invocation of the appropriate remedy for failure to disclose evidence during discovery is left to the sound discretion of the trial court and will not be reversed unless prejudice or surprise is demonstrated. (*People v. Sakalas* (1980), 85 Ill. App. 3d 59, 405 N.E.2d 1121.) Here, defendant's trial counsel did not seek a continuance in order to locate the results of the examination to which the complainant referred. Rather, he moved for disclosure at the close of the State's case. Generally, the failure to seek a continuance waives a claim of discovery error based upon surprise. (*People v. Nelson* (1980), 92 Ill. App. 3d 35, 415 N.E.2d 688, *cert. denied* (1981), 454 U.S. 900, 70 L. Ed. 2d 217, 102 S. Ct. 404.) Thus, we consider defendant's allegation of error to be waived by his pursual of an inappropriate, more extreme remedy at trial.

Even aside from waiver, however, we find no merit in defendant's

allegation of discovery violation by the State. There is no indication that the State was aware of a physical examination of the complainant or possessed its results prior to defense counsel's cross-examination of the complainant at trial. It has been held repeatedly under similar circumstances that no discovery violation has occurred, even if absence of the subject matter remains unexplained. See, *e.g., People v. Rosenborgh* (1974), 21 Ill. App. 3d 676, 315 N.E.2d 545, *cert. denied* (1975), 421 U.S. 919, 43 L. Ed. 2d 787, 95 S. Ct. 1584; *People v. Molsby* (1978), 66 Ill. App. 3d 647, 383 N.E.2d 1336; *People v. Gaitor* (1977), 49 Ill. App. 3d 449, 364 N.E.2d 484; *People v. Steptoe* (1976), 35 Ill. App. 3d 1075, 343 N.E.2d 1.

■ The fact that the DCFS file contained some information about physical examination of the complainant does not alone establish improper suppression of discoverable material by the State. In *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 405 N.E.2d 1121, possession by the Chicago Transit Authority (CTA) of a doctor's report on the victim in a battery case was not imputed to the State for purposes of Rule 412 disclosure requirements. The *Sakalas* court relied upon the language of paragraphs (f) and (g) of Rule 412 (87 Ill. 2d R. 412(f), (g)) to hold that "while the State is expected to know of the existence of material in the possession of the police department, as it is an investigative body, there is no expectation that the State know of information possessed by a non-investigative governmental body such as the CTA." (85 Ill. App. 3d 59, 74, 405 N.E.2d 1121, 1133.) Similarly here, knowledge of the physical examination of the complainant by DCFS, a non-investigative governmental body, will not be imputed to the State. Without knowledge of the examination or possession of its results, the State cannot be found to have suppressed the material. *Sakalas; People v. Molsby* (1978), 66 Ill. App. 3d 647, 383 N.E.2d 1336.

But defendant also claims error by the trial court in not divulging information about the examination after its *in camera* inspection of the DCFS file. Sections 11 and 11.1 of the Abused and Neglected Child Recording Act, under which the State sought to block disclosure of the contents of the DCFS file, provided in pertinent part as follows:

> "Sec. 11. All records concerning reports of child abuse and neglect and all records generated as a result of such reports, shall be confidential and shall not be disclosed except as specifically authorized by this Act or other applicable law. ***"

> "Sec. 11.1. A person shall have access to the records described in Section 11 only in furtherance of purposes directly connected with the administration of this Act. Such persons

and purposes for access include:

\* \* \*

(7) A court, upon its finding that access to such records may be necessary for the determination of an issue before such court; however, such access shall be limited to in camera inspection, unless the court determines that public disclosure of the information contained therein is necessary for the resolution of an issue then pending before it;

\* \* \*."

Ill. Rev. Stat. 1979, ch. 23, pars. 2061, 2061.1

In this case, then the purpose of the trial court's *in camera* inspection pursuant to Rule 415(f) and section 11.1 was to select out of the DCFS file that information which was (1) requested, (2) discoverable under law, and (3) necessary for the resolution of an issue before it, while keeping confidential all else.

Rule 412(a)(iv) requires the disclosure upon an accused's request of "any reports or statements of experts, made in connection with the particular case, including *results* of physical or mental examinations." (Emphasis added.) (87 Ill. 2d R. 412(a)(iv).) Defendant's discovery motion requested production of evidence using the same language as the rule. Thus, only the results of examinations were mandatorily discoverable and only results were requested from the State. After the trial court's inspection of the DCFS file, defense counsel spelled out with particularity what he had hoped to learn from the file: information about the complainant's mental health and whether the complainant had made prior allegations of sexual abuse.

■ The information regarding the mere fact of whether a physical examination was conducted was never requested and, unless accompanied by the results of that examination, was not subject to mandatory disclosure. The information in the DCFS file contains only the fact that a pelvic examination was made on or about July 29, 1980, and that a pregnancy test proved negative. The only information possibly to be found in the results of a physical examination which defendant argues would be "necessary for the resolution of an issue" in this case would be whether the complainant's hymen was intact, a fact not revealed in the DCFS file. Therefore, the file contained no information which was requested by defendant, subject to mandatory disclosure, *and* necessary for the resolution of an issue before the court. The trial court's failure to disclose was not error.

### III

Defendant also contends that the trial court erred in denying his

motion to have the complainant mentally examined by a psychiatrist. As with the physical examination issue, the State first argues that the trial court lacked jurisdiction to order such an examination. The Illinois Supreme Court has specifically held that a trial court may order a psychiatric examination of the complaining witness in a criminal case involving a sex violation. (*People v. Rossi* (1972), 52 Ill. 2d 13; *People v. Glover* (1971), 49 Ill. 2d 78.) Once that court has declared the law on point, this court may not overrule or modify that ruling. (*Rusher v. Smith* (1979), 70 Ill. App. 3d 889, 388 N.E.2d 906.) We note that Illinois is just one of the many States which has permitted its courts the power to order such an examination (see Annot., 18 A.L.R.3d 1433 (1968 & Supp. 1983)), and that recently enacted Public Act 83—289 would prohibit court-ordered mental examinations of sex victims only after January 1, 1984.

Whether to order a psychiatric examination of the complainant in a sex offense prosecution was within the discretion of the trial court, and the moving party must have presented a compelling reason for such examination. (*People v. Glover* (1971), 49 Ill. 2d 78; *People v. Seel* (1979), 68 Ill. App. 3d 996, 386 N.E.2d 370.) As a compelling reason, defendant points to the fact that the complainant had been placed in a psychiatric ward for children for two months in 1979 and that she had previously alleged sexual misconduct toward her by her step-father. Defendant argues that these facts suggest that "significant impeachment evidence" may have been produced by a mental examination and that the complainant may have lied about her father's conduct.

■ With regard to the complainant's stay in a psychiatric ward, defendant fails to establish how that fact relates to her competency to testify. The complainant testified that she went to the institution because she "was upset and angry *** [about] the fact that I didn't have a family." Previous hospitalization for mental problems by itself does not present a compelling need to order a psychiatric examination where the defendant fails to establish a connection between the witness' mental problem and her ability to give competent testimony. See *People v. Seel* (1979), 68 Ill. App. 3d 996, 386 N.E.2d 370; *People v. Dentley* (1975), 31 Ill. App. 3d 679, 334 N.E.2d 774.

Nor would the complainant's prior allegation of sexual misconduct by her step-father have warranted her psychiatric examination. Defendant's suggestion that that previous allegation was a fabrication is unfounded. The complainant testified that her step-father had pleaded guilty to the offense and had been sentenced to 18 months' imprisonment. Defendant does not now challenge the truth of this tes-

timony. We do not view it to be a compelling reason to submit the complainant here to a psychiatric examination merely because defendant suggests without substantiation that a previous sexual misconduct allegation by her might have been the result of "some fantasies." The fact that fabrication on the part of the complainant could not be totally ruled out was counterbalanced adequately by defendant's opportunity, fully employed, to attempt to impeach her during cross-examination with regard to the previous allegation, as well as her psychiatric hospitalization. (See *People v. Seel* (1979), 68 Ill. App. 3d 996, 386 N.E.2d 370.) Her veracity could adequately be weighed by the trier of fact without a psychiatric examination.

▮ Defendant cursorily adds that he was improperly denied access to the results of any previous psychiatric examinations conducted on the complainant and found in the DCFS file. In quashing defendant's *subpoena duces tecum* with regard to the DCFS file, the court indicated that "the matters that maybe [*sic*] in the file in regard to the mental health of [the complainant] and whether she has ever had treatment or been adjudicated incompetent or diagnosed with a psychosis *** are within the knowledge of this defendant ***." Defense counsel acknowledged to the trial court that he had information about the complainant's psychiatric treatment in Florida in 1979. Our inspection of the DCFS file reveals no other psychiatric examination of the complainant before trial. Because defendant was not denied any psychiatric information from the file not already within his knowledge, we find no error.

## IV

Defendant next contends that it was error for the prosecutor in her rebuttal argument at the close of trial to point out that defendant could have but did not call a doctor to testify about the complainant's condition. Defendant argues on appeal that the prosecutor's remarks were improper because he had in fact moved to have the complainant examined by a doctor but was prevented by the State's objection which was sustained by the court.

During his closing argument, defense counsel made the following remarks:

"This girl was supposedly examined by a medical doctor on July 22nd, 1980. If that's true or not, we only have the girl's word. You better believe if there was a doctor involved in this and it could support any evidence to substantiate what that girl was saying, the state would have brought that doctor in here.

What did he find that we don't know about? I don't have the

reports. I haven't seen them. But I sure would have liked to have known if that girl was a virgin on July 22nd, six days after this was suppose [*sic*] to have taken place. I sure would have liked to know that. It sure would have helped us make up our mind a little bit."

During the prosecutor's rebuttal argument, she responded and defense counsel objected as follows:

"MS. CHODOS: ***Mr. Russell wants to know why we didn't bring the doctor in. Of course, Mr. Russell can call witnesses just like the state. He didn't bring a doctor in.

MR. RUSSELL: Judge, I didn't even know about the doctor. I object. She knows that.

THE COURT: Overruled."

It is well established that while it is error for a prosecutor to comment on the failure of the accused to produce witnesses who are equally accessible to the prosecution, it is not error for the prosecutor to reply to a question propounded by defense counsel why he did not bring in the same witness, so long as the remarks are properly limited to a reply. (*People v. Izzo* (1958), 14 Ill. 2d 203, *appeal dismissed and cert. denied* (1960), 362 U.S. 403, 4 L. Ed. 2d 864, 80 S. Ct. 812; *People v. Wheeler* (1955), 5 Ill. 2d 474; *People v. McElroy* (1980), 81 Ill. App. 3d 1067, 401 N.E.2d 1069.) Here, the prosecutor's remarks were limited and directly responded to defense counsel's remarks questioning the State's failure to produce the doctor who examined the complainant after she was taken into foster care.

Defendant points out on appeal that he was denied the opportunity to call an examining doctor by the State's sustained objection to his motion to have the complainant examined by court order. Therefore, he argues, it was unfair for the prosecutor to say that he could have produced the testimony of the doctor. However, this is the first time the defendant raises this argument. The remarks of defense counsel to which the prosecution was responding referred only to the doctor who the complainant indicated had examined her, not to a doctor that the court might have appointed. When defense counsel objected during rebuttal argument, his basis was only that he "didn't even know about the doctor." And, during the hearing on defendant's motion for a new trial, he argued error in the prosecutor's argument only as follows:

"Well, Judge, I objected at that time. I still object. I didn't even know there was a doctor until the last day of trial. How could I possibly bring in the doctor? I think it is prosecutorial misconduct when she states I should have brought the doctor

in. I had no way of knowing there was a doctor involved. I never received any reports—still haven't received any reports as to this girl being examined."

Thus, the only question presented to the trial court, and therefore the only question that may be argued to this court (*People v. Curry* (1973), 56 Ill. 2d 162), was the propriety of the prosecutor's remarks with reference to the doctor who had already examined the complainant.

■ Defendant's trial argument, that the remarks were improper because defense counsel did not know of the doctor's examination and therefore could not have called that doctor, is not pursued on appeal. It is without merit in any event, because the doctor could properly have been called to testify equally as well by either party, but neither did so because of ignorance of the potential witness' existence. In *People v. Pearson* (1972), 52 Ill. 2d 260, both parties had been unsuccessful in their attempts to reach the potential witness. After defense counsel in argument noted the State's failure to produce the witness, the prosecutor responded, "*** counsel knows why she wasn't brought into court." The supreme court, citing *People v. Wheeler* (1955), 5 Ill. 2d 474, held the prosecutor's retort permissible as one invited by defense counsel's remarks. (*People v. Pearson* (1972), 52 Ill. 2d 260, 274.) Similarly, it was permissible for the prosecutor to state, "the man is dead" in response to defense counsel's question "Where is he?" regarding an uncalled witness. (*People v. Griggs* (1977), 51 Ill. App. 3d 224, 227-28, 366 N.E.2d 581, 584.) Thus, it is as proper for the State to respond to a defense counsel's questioning of the absence of a potential witness where both parties face the same impediment to calling a witness as it is proper where neither party is impeded.

■ Even if the prosecutor's remarks were considered improper, reversal would not be warranted. A trial court is given wide latitude in determining the propriety of the closing argument; a reviewing court will not disturb the trial court's determination absent a clear abuse of discretion based upon the record as a whole and the arguments in their entirety. (*People v. Perez* (1983), 113 Ill. App. 3d 143, 446 N.E.2d 1229.) The remarks at issue here are the only ones challenged, and we do not view them as causing undue prejudice to defendant.

V

Defendant contends that the testimony of the complainant's sister regarding the fact that the complainant had told her about the alleged offense was improperly admitted. He claims that that testimony did

not fit the corroborative complaint exception to the hearsay rule, and, further, that even that exception would not permit the testimony of the complainant's sister that the complainant had indicated to her that "it had been going on *** for some time." Since this issue was neither raised in defendant's post-trial motion nor argued at the hearing on that motion, we consider it waived. *People v. Baynes* (1981), 88 Ill. 2d 225.

■ Even if not waived, we consider any error in admitting the complainant's sister's corroborative complaint testimony to be harmless. Before she testified, the complainant herself, without objection, testified that she had told her sister about the incident. Further, the complainant testified that her father had had sexual intercourse with her numerous times between January 1980 and the incident at issue. In *People v. Robinson* (1978), 73 Ill. 2d 192, hearsay testimony by the complainant's sister and a police officer of her statements to them regarding details of the rape and the assailant's identity, although evidence beyond the mere fact of complaint, was admitted. The supreme court, however, found no reversible error because all of the hearsay information was also established directly in the testimony of the complainant, the out-of-court declarant whom the defense counsel could and did cross-examine. Accord, *People v. Leggans* (1980), 80 Ill. App. 3d 51, 399 N.E.2d 349; *People v. Wilcox* (1975), 33 Ill. App. 3d 432, 337 N.E.2d 211.

Accordingly, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

HOPF and NASH, JJ., concur.