THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEROME DAVIS *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 79-1610, 79-2015 cons.

Opinion filed June 11, 1981.

300

T. Lee Boyd, Jr., Isaiah Skip Gant, and Ellis E. Reid, all of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Richard Burke, and Robert J. Kaiser, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendants, Jerome Davis and Alvin Terry, were convicted of deviate sexual assault (Ill. Rev. Stat. 1975, ch. 38, par. 11—3(a)), and aggravated kidnapping (Ill. Rev. Stat. 1975, ch. 38, par. 10—2(a)(3)). Each defendant was sentenced to serve 6 years' imprisonment for deviate sexual assault and 4 years' imprisonment for aggravated kidnapping, the sentences to run concurrently. On appeal, defendants raise the following issues: (1) whether the trial court erred in denying their pretrial motions to suppress certain evidence and to quash arrests; (2) whether the trial court erred in denying their motion for psychiatric and fingerprint examinations of the complainant; (3) whether reversible error was committed by the State's withholding certain evidence that should have been produced in discovery; and (4) whether the State proved the offenses of deviate sexual assault and aggravated kidnapping beyond a reasonable doubt.

We affirm.

A review of the record indicates that on July 21, 1977, defendant Terry called defendant Davis to accompany him to downtown Chicago. On their return, they stopped at 65th and University Avenue where they met two women, one of whom was the complainant. Terry testified that he entered into a conversation with complainant in the store while Davis waited in the car across the street. Terry said the complainant asked him for "a date," which he understood to be an offering of sexual favors. She also asked whether he would give her some marijuana. When Terry responded in the affirmative, he and the complainant left the store and got into the car in which Davis was waiting. Terry, along with his two passengers, drove to his apartment at 8100 South Dobson Avenue and

parked the car in the driveway. The two men and complainant were in the apartment but a short period when Terry left for the neighborhood liquor store. He was gone about 30 minutes.

According to the witness, when he returned from the store and entered the apartment, he heard the sound of laughter. On his way to the kitchen to prepare drinks, the complainant again asked for some marijuana. He, Davis and the complainant had drinks and smoked marijuana. Shortly thereafter, the witness testified, he excused himself, went into the bedroom, and got into bed to relax. The complainant entered the bedroom and asked whether or not he was "ready for her." He refused her advances claiming he did not feel "up to it." Then, complainant asked about being paid. The witness stated he refused to give her any money because she had consumed his liquor and smoked his marijuana. Complainant then asked to be taken home. The witness and Davis drove her home. Upon leaving the car, the complainant warned Terry that he would come to regret not having paid her. The witness claimed that because of the complainant's threats he knew why the police had been led to arrest him.

Defendant Davis testified to substantially the same facts as did Terry. He added that once in the apartment, Terry told him and the complainant to make themselves at home. Davis stated that at first he sat on the couch; then he got up to play some records. Meanwhile, the complainant was walking around the apartment admiring the furniture. Terry left, saying he was going to get something to drink and some cigarettes. Davis had a conversation with the complainant during which he learned about her hip injury. She said she had rheumatic fever as a child which caused her hip bone to fuse; she was having "dates" in order to make money to pay for an operation. According to the witness, the complainant then asked him what he wanted her to do; he told her he wanted her to perform an act of oral sex. She replied, "O.K.; it will cost you ten dollars." Davis said he agreed and the complainant did what he asked. He denied forcing the complainant to perform the act; he also denied striking the complainant.

Further testifying, Davis said that after Terry returned to the apartment all three sat drinking and smoking marijuana. Shortly thereafter, Terry got up and went into the bedroom, followed by the complainant. Davis stated he could not see into the bedroom nor could he hear any conversation between Terry and the complainant. Soon afterwards, Terry and complainant came out of the bedroom and all of them left the apartment and drove the complainant home. Davis asserted that during the ride to her home the complainant became very angry and continued asking Terry about money. When Terry refused to give her any money, she said, "You're going to regret it."

The complainant testified that on July 21, 1977, she was at 65th and University Avenue when she was grabbed from behind and forced into a car. She identified Davis as the person who grabbed her. She said that she was forced to accompany Terry and Davis to Terry's apartment. Once inside, both defendants treated her in a rough and harsh manner. Despite her resistance, the defendants undressed her, ripping her skirt and tearing the buttons from her blouse.

Further testifying, complainant stated that Davis demanded she perform oral copulation. He grabbed her head and pulled it down on his penis forcing himself into her mouth. He then attempted to have intercourse with her but her legs would not spread. At that point, he turned her over and forced his penis into her rectum. When Davis was finished, he allowed the complainant to get up from the couch and go to the bathroom. Upon Terry's return to the apartment, he, too, demanded and had complainant perform an act of oral sex upon him. He also forced his penis into her rectum. Complainant testified that she was crying hysterically and she was in shock. She saw that she was bleeding from her rectum. A short time thereafter, the defendants drove complainant to her residence where she was allowed out of the car.

The complainant stated she immediately went to her apartment and called her boyfriend who met her there. Some friends arrived to take her to Billings Hospital. At the hospital, she spoke with police officers concerning the incident. The complainant further testified that after her recovery, on July 25, some 4 days after the incident, she directed police to the home of Terry. She recognized the car parked in the driveway as the one in which she had ridden the day of the incident. Later, at the police station, she identified the two defendants out of a six-man lineup. The complainant testified that she had never seen either of the defendants before the date of the incident. She reiterated she did not give either of them consent to have sex with her.

As a result of complainant leading police there, Terry was arrested in his home. As a result of Terry giving the police Davis' address, Jerome Davis was arrested in his home. In both arrests, the police did not have arrest warrants.

Defendants contend the trial court erred in failing to quash their warrantless arrests. They assert that the arrests, made while in their respective homes, violated their constitutional rights under the fourth amendment to the Federal Constitution, citing *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, and *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543. Defendants do not deny that their arrests were based on probable cause. Our analysis of the facts discloses that recognizable factors of exigency existed to justify the entry into the abodes of defendants and to make their arrests. The *Abney* case

allowing warrantless arrests in the home delineates such factors as (1) a grave offense is involved, particularly a crime of violence; (2) the suspect is believed to be armed; (3) there exists a clear showing of probable cause; (4) there is strong reason to believe the suspect is on the premises being entered; (5) there is a likelihood the suspect may escape if not swiftly apprehended; (6) the entry into the premises is peaceful; and (7) there has been no unjustified and inordinate delay in which time a warrant could have been obtained. (See *Abney*.) These factors are not exclusive and all of them need not be present. The guiding principle governing searches and seizures under constitutional provisions is reasonableness, and whether the police have acted reasonably depends on the circumstances of each case. *People v. Davis* (1981), 93 Ill. App. 3d 217, 221-22, 416 N.E.2d 1197, 1201.

■■ Review of the record indicates the police officer's decision to proceed to the defendants' residences without warrants immediately followed receipt of the complainant's statement. The officers could not have located defendant Terry's home, the site of the incident, without the aid of the complainant, and once they found the residence they were required to act immediately. At Terry's residence, the police officer requested that the keys to the apartment be passed through the opened window; the defendant cooperated in doing so. At the home of Davis, the police made the arrest when the defendant answered the door at their knock. The actual arrest occurred at the door. There was no deliberate or unjustified delay in the police officer's arrest of Terry or Davis. Once Terry had provided the address of Davis' home, it was reasonable, in our view, to proceed immediately to effect an arrest. Accordingly, the trial court properly refused to quash the arrests.

■■ Defendants assert that the trial court erred by not granting their request for psychiatric and fingerprint examinations of the complainant. While we agree that the trial court has jurisdiction to order an examination of the complaining witness in a case involving sexual offenses (*People v. Glover* (1971), 49 Ill. 2d 78, 82, 273 N.E.2d 367, 370), the matter is one vested in the sound discretion of the trial court and we find no abuse of that discretion in refusing to order the examinations in this case.

■■ Further, we do not agree with defendants that the State should have disclosed to defendants that the complainant was undergoing psychological counseling or psychiatric care. Such failure to disclose does not rise to reversible error. And defendants have not presented authority or reasoning to the contrary.

In the case of a conviction, a court of review cannot encroach upon the function of the trier of fact to weigh the credibility of witnesses and will not set aside a finding of guilty unless the evidence is so palpably contrary, unreasonable, improbable or unsatisfactory as to leave a reason-

able doubt of guilt of the accused. *(People v. Payton* (1980), 84 Ill. App. 3d 181, 183-84, 405 N.E.2d 18, 20; *People v. Genus* (1979), 74 Ill. App. 3d 1002, 1008-09, 393 N.E.2d 1162, 1167.) Defendants allege certain inconsistencies in the evidence presented at trial. While there are points at which the testimony of defendants would vary from that of complainant, it is the province of the trier of fact to resolve the conflict, determining which witness or witnesses to believe. *People v. Leverson* (1979), 69 Ill. App. 3d 726, 731, 387 N.E.2d 931, 935.

The evidence indicates that complainant performed acts of oral sex at the home of defendant Terry, against her will. The record indicates she was the subject of an asportation under threat of force carried out in connection with the sexual assault.

Additionally, oral deviate sexual assault and aggravated kidnapping based thereon do not require proof of use of a deadly weapon. Whether or not there was a weapon used in this case is also left to the trier of fact. By the same means, the offenses of rape and anal deviate sexual assault require proof of vaginal and anal penetration. It is apparent from the record that the trier of fact was satisfied that such proof was made in this case. It is only important to this court of review that the evidence supports the finding of guilt on the charges of deviate sexual assault, by way of oral copulation, and aggravated kidnapping. We find the record bears nothing so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt of the guilt of the defendants.

For the aforesaid reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

ROMITI, P. J., and LINN, J., concur.