Docket No. 93758–Agenda 4–March 2003.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ISMAEL LOPEZ, Appellant.

Opinion filed October 17, 2003.

JUSTICE KILBRIDE delivered the opinion of the court:

In this case we decide whether a trial court can order the physical examination of an alleged sex offense victim. Defendant was charged with aggravated criminal sexual abuse under section 12–16(c)(1)(i) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/12–16(c)(1)(i) (West 1998)). He sought a gynecological examination of the alleged victim, B.B., who was three years old at the time. The circuit court of Du Page County granted defendant’s request, and B.B.’s family refused to comply. As a sanction, the court granted defendant’s motion 
in limine
 to prohibit the State from introducing any medical expert evidence of its own. On appeal, the appellate court reversed, finding that the record did not establish a compelling need for the examination, and remanded the cause for a hearing on the issue. 328 Ill. App. 3d 563. We granted defendant leave to appeal (177 Ill. 2d R. 315) and now affirm in part, vacate in part, and remand. We hold that a trial court cannot order the physical examination of a complaining witness in a sex offense case. We further hold that, when a trial court rules on the admission of evidence in a sex offense case where a defendant has requested the physical examination of a complaining witness and the witness refuses to submit to the examination, the court must balance the due process rights of the defendant against the privacy rights of the alleged victim, by deciding what medical evidence, if any, the State is allowed to introduce.

I. BACKGROUND

At the behest of B.B.’s family, Dr. E. Anderson examined B.B., who was 20 months old at the time, and concluded that she was a victim of sexual abuse. This conclusion was based in part on Dr. Anderson’s finding that her labial origin “show[ed] a small false passage, suggestive of partial tearing” and also on the presence of scar tissue surrounding the vagina. Dr. Anderson reported that he was unable to inspect B.B.’s hymen adequately because B.B. complained of discomfort and “with[drew] from the situation.” Dr. Anderson explained that, while he could not “100%” rule out a developmental anomaly, he felt that B.B.’s condition was the result of a traumatic injury. He further commented that:

“[c]ertainly, visualization of the hymen would provide additional useful info[rmation] for a definitive [diagnosis], although the synechia is suggestive of previous scarring and raw edges coming together, suggestive of trauma. *** Due to the swelling of the tissues, I should note that it was difficult to decide whether the tissue adhesion was with the labia minora or with the actual [vaginal] wall, although it would appear to be most likely labial.”

Dr. M. Flannery also examined B.B. She prepared 17 colposcopic photographs of B.B.’s vaginal region. Based on her examination, Dr. Flannery concluded that B.B.’s condition was “suspicious for trauma most likely consistent with digital penetration.” Dr. Flannery’s findings, in part, noted:

“Thin hymenal rim with partial obliteration of the rim posteriorly. Edges of the hymen are thickened. Notched areas at approximately the two o’clock and ten o’clock positions. Widened elongated hymen.”

Following B.B.’s medical examinations, defendant was indicted for aggravated criminal sexual abuse under section 12–16(c)(1)(i) of the Criminal Code (720 ILCS 5/12–16(c)(1)(i) (West 1998)). Approximately three months after the medical examinations, the State presented defendant with the reports of Dr. Anderson and Dr. Flannery. On defendant’s request, the State later provided defendant with copies of the photographs taken by Dr. Flannery.

Approximately 13 months after the examinations, when B.B. was about three years old, defendant filed a motion to produce B.B. for an independent gynecological examination. Attached to defendant’s motion to produce was the affidavit of his medical expert, Dr. R. Slupnik. Dr. Slupnik stated that she had reviewed the medical records and the photographs of B.B. According to Dr. Slupnik, she was “unable to arrive at a conclusion” about Dr. Flannery’s finding of a “partial obliteration of the [hymenal] rim posteriorly.” Dr. Slupnik opined:

“Partial obliteration of the hymen is not conclusively seen on the photographs submitted to me. Some clarification of the area of the hymen at 6 or 7 o’clock could be obtained by various other exam techniques, including a change of position.

A repeat examination of the alleged victim would resolve whether there is partial obliteration posteriorly. The examination would be conducted with the patient in supine (lying on her back) position, with the knees apart (so-called ‘frog-leg’ position) as well as in the prone position (‘knee chest’). One ounce of sterile water would be used to rinse the hymen of any mucus or other debris and to facilitate its depiction. The exam would take approximately 5 minutes. Other than Q-tips, no other instruments would be used during the exam.

Further, ‘findings’ which were allegedly present during Dr. Flannery’s exam 14 months ago should still be present now, if they are specific for sexual abuse. A female hymen does not re-grow, re-generate, or re-attach if truly traumatized by blunt force penetrating trauma. Findings that are specific for sexual abuse will be permanent.”

A hearing was held on the motion to produce B.B. for an independent gynecological examination. At the hearing, the State contended that an examination as proposed by Dr. Slupik would last longer than five minutes and also denied that the evidence of trauma seen by Dr. Flannery would still be present. The State complained that defendant waited too long to file his motion to produce B.B. The State further clarified that Dr. Flannery did not suggest that there was medical evidence conclusive of “digital penetration,” but simply that the condition of B.B.’s genitalia was “suspicious for trauma most likely consistent with digital penetration.”

Defendant argued that the chief reason Dr. Slupik wished to examine B.B. independently was that she did not believe the photographs conclusively showed a partial obliteration of the hymen. In response to the State’s reference to defendant’s delay in requesting the independent physical examination, defendant suggested that the trial court’s congested docket was, in part, responsible for the delay.

Following the hearing, the trial court granted defendant’s motion for an examination of B.B. by Dr. Slupik. The trial court record is silent as to the rationale behind this decision. The lone comment on the issue is the court’s observation during argument that Dr. Flannery would not be permitted to testify at trial regarding her conclusions because Dr. Flannery could not “even testify as to a speculation.” The trial court later denied the State’s motion to reconsider without hearing argument from the parties.

B.B.’s family refused to produce her for the examination. As a result, defendant moved to dismiss the indictment. Defendant contended that Dr. Slupik’s examination “could clearly exonerate” him and that his “due process right to a fundamentally fair trial will be destroyed without the opportunity to obtain the potentially exonerating evidence that could come along only from an independent examination of [B.B.].”

In response, the State sought an evidentiary hearing to determine the appropriate sanction to be levied for the failure to produce B.B. so that the parties could present the testimony of their experts. The trial court stated that it considered the issue of the appropriate sanction “a simple legal issue” and scheduled a hearing for legal argument only. At that hearing, the trial court informed the State that a sanction of dismissal or exclusion of evidence would follow if the State did not produce B.B. for an independent medical examination.

B.B.’s family still refused to produce B.B. for the examination. The State again requested that the court conduct an evidentiary hearing before deciding the appropriate sanction. The court denied the request and dismissed the indictment. In its written order, the court indicated that its decision was based upon “the U.S. Constitution, Illinois Constitution, effective assistance of counsel, due process and reasons more fully set out in the record.”

The parties then agreed that it would be more logical from a procedural standpoint to reinstate the indictment and allow the court to address defendant’s motion as a motion 
in limine
 to exclude evidence. Thus, the court reinstated the indictment. Defendant then filed a motion 
in limine
 to bar the State from presenting the testimony of Dr. Anderson and Dr. Flannery concerning their examinations of B.B., as well as any other evidence derived from those examinations.

At the hearing on defendant’s motion 
in limine
, the State made its third request for an evidentiary hearing. In response, defendant argued that the court had already “balanced the discovery due process interests of *** defendant against the privacy interests of the victim” when it granted defendant’s request for the examination. Defendant also contended that B.B. had already been examined twice and that the proposed examination was “nonphysically invasive.” Defendant further urged that fairness would be served neither by the cross-examination of Dr. Anderson and Dr. Flannery nor by the testimony of nonexamining experts concerning the colposcopic photographs, as the photographs would have the physical examinations as their “direct source.”

The State answered that the court’s previous balancing of the respective interests was inadequate in that the court had not taken into account all of the evidence that the State intended or attempted to present. The State noted that Dr. Slupnik’s sole disagreement with Dr. Anderson and Dr. Flannery concerned the finding that B.B.’s genital area showed a partial posterior obliteration of the hymen. The State again suggested that an evidentiary hearing should be conducted to determine whether a finding of a partial posterior obliteration of B.B.’s hymen is necessary to a conclusion that her genital area had been traumatized. The State further asserted that the real concern with another physical examination was its potential psychological impact given its nature and that it would be the third examination for B.B.

Following the hearing on defendant’s motion 
in limine
, the court denied the State’s request for an evidentiary hearing and granted defendant’s motion. The court, in relevant part, found that:

“the body of the young child is effectively still the physical evidence in this case ***. The proposed defense examination of the ‘evidence’ would be more than potentially useful. In light of the incomplete or inconclusive findings of the State’s two experts and as it could determine whether or not ‘findings’ specific for sexual abuse are present, that exam could determine whether the alleged victim is a victim indeed (leaving as the only practical issue the identity of the perpetrator of the abuse). There is a clear need for the exam.”

The trial court recognized that both defendant’s due process rights and the alleged victim’s rights were at issue. Nevertheless, the court found that under 
People v. Newberry
, 166 Ill. 2d 310 (1995), and 
People v. Wheeler
, 151 Ill. 2d 298 (1992), cross-examination of the State’s experts was insufficient to protect defendant’s rights because an expert who has personally examined a victim is in a better position to render an opinion than a nonexamining expert.

In particular regard to 
Newberry
, the court commented:

“[The 
Newberry
 court] was concerned with the examination of physical evidence unlike 
People v. Wheeler
 which dealt with a psycho therapist’s [
sic
] interview with a rape victim. The 
People v. Wheeler
 court barred the State’s use of evidence of rape trauma syndrome through the testimony of an examining expert. The State would be allowed to introduce rape trauma evidence through a nonexamining expert. That is, arguably, the State could call an expert to describe the syndrome and its symptoms, and call other witnesses to offer evidence of those symptoms. The 
People v. Newberry
 court upheld the dismissal of the charge because of the inability of the State to provide the physical evidence for the defense expert’s examination. This is the situation in the case before this court. The State has shown that they are able, and willing, to present the young child, the physical evidence, to State’s experts but not to a defense expert.”

As a result of these findings, the court ordered that the expert testimony and reports of Dr. Anderson and Dr. Flannery be excluded from evidence. In addition, the trial court precluded the State from introducing the evidence of nonexamining experts.

On the State’s appeal, the appellate court reversed, holding that defendant failed to demonstrate a compelling need to have the victim examined by his medical expert. 328 Ill. App. 3d 563. According to the appellate court, the “critical inquiry” involved in applying the “compelling need” test is “ ‘whether the evidence sought by the defendant is of such importance to his defense that it outweighs the potential for harm caused by the invasion of the complainant’s privacy, including the prospect that undergoing a physical examination might be used for harassment of a prosecuting witness.’ ” 328 Ill. App. 3d at 573, quoting 
State v. Barone
, 852 S.W.2d 216, 222 (Tenn. 1993). The appellate court remanded the cause to the trial court for an evidentiary hearing to determine the need for an independent physical examination of B.B., providing the trial court with detailed instructions on how to proceed. 328 Ill. App. 3d at 572-75. In an unpublished portion of its opinion, the appellate court further held that the trial court erred in granting defendant’s motion
 in limine
 to bar the State from introducing any evidence or testimony from B.B.’s examining physicians. By leave of this court, defendant appeals from the appellate court decision. 177 Ill. 2d R. 315.

II. ANALYSIS

A. Physical Examination

In 
People v. Glover
, 49 Ill. 2d 78 (1971), the defendant, charged with deviate sexual assault, sought both a psychiatric examination of the complaining witness to investigate her alleged history of “ ‘emotional instability and immaturity’ ” and an ophthalmological examination “to determine her ability to see and identify the defendant” because it was dark at the time of the alleged assault. 
Glover
, 49 Ill. 2d at 81. The trial court denied the motion to compel the examinations. On appeal, this court stated that “[t]here is no question of [an Illinois court’s] jurisdiction to order an examination of the complaining witness in a case involving a sex violation.” 
Glover
, 49 Ill. 2d at 82, citing 
People ex rel. Noren v. Dempsey
, 10 Ill. 2d 288 (1957). Nevertheless, we affirmed the trial court’s denial of the motions for the examinations and held that: (1) requests for such examinations must be premised upon a compelling reason demonstrated by the defendant; and (2) the decision to order an independent examination is subject to the discretion of the trial court. 
Glover
, 49 Ill. 2d at 82.

It is well settled that prior precedent should be overturned “only on the showing of good cause,” only where there is “ ‘special justification’ ” for the departure, or only where the reasons for departure are “compelling.” 
People v. Tisdel
, 201 Ill. 2d 210, 228-29 (2002) (quoting 
Heimgaertner v. Benjamin Electric Manufacturing Co.
, 6 Ill. 2d 152, 167 (1955), 
Chicago Bar Ass’n
, 161 Ill. 2d 502, 510 (1994) (quoting 
Arizona v. Rumsey
, 467 U.S. 203, 212, 81 L. Ed. 2d 164, 172, 104 S. Ct. 2305, 2311 (1984)), and 
People v. Robinson
, 187 Ill. 2d 461, 463-64 (1999)). This court has recognized that it will not depart from precedent “ ‘merely because the court is of the opinion that it might decide otherwise were the question a new one.’ ” 
Robinson
, 187 Ill. 2d at 464, quoting 
Maki v. Frelk
, 40 Ill. 2d 193, 196-97 (1968). For the reasons that follow, we find that such compelling justification exists in this case. We, therefore, overrule 
Glover
 and hold that a trial court may not order the physical examination of a complaining witness in a sex offense case.

1. 
Criminal Versus Civil Proceedings

Noren
, the sole case cited in 
Glover
 for the proposition that a trial court can compel the physical examination of a complaining witness, involved a negligence action for personal injuries suffered by a plaintiff in an automobile accident. The defendant sought a physical examination of the plaintiff to determine the extent of the plaintiff’s injuries in order to prepare for trial. He requested the entry of an order requiring the plaintiff to submit to a physical examination by a physician chosen by the defendant. The trial court granted the defendant’s request and the plaintiff filed a writ of 
mandamus
 to compel the trial court to expunge the order. This court denied the writ, reasoning, in part, as follows:

“It is common knowledge that the circuit court of Cook County has for years consistently ordered plaintiffs to submit to physical examinations in appropriate cases. In 
People ex rel. Leighty v. Fisher
, No. 30219 (1947, unreported), this court denied leave to file an original petition for 
mandamus
 to expunge an order of the circuit court of Cook County that required the plaintiff in a personal injury case to submit to physical examination. The time has come for this court to recognize explicitly the propriety of this practice. *** [C]ases that have asserted a want of power in our courts to order a physical examination when physical condition is in issue are overruled.” 
Noren
, 10 Ill. 2d at 294.

Thus, it is apparent that 
Noren
 was concerned solely with civil cases, involving a plaintiff’s physical condition.

Alleged victims in criminal cases, unlike plaintiffs in civil cases, are not parties to the action, nor are they under control of the State. The appellate court in 
People v. Visgar
, 120 Ill. App. 3d 584 (1983), noted 
Glover
’s shortcoming of relying on a civil case. 
Visgar
, 120 Ill. App. 3d at 587. Nevertheless, due to the apparent unequivocal nature of our holding in 
Glover
 and given that 
Glover
 was again cited with approval in 
People v. Rossi
, 52 Ill. 2d 13 (1972), and in a handful of appellate court cases (see, 
e.g.
, 
People v. Davis
, 97 Ill. App. 3d 299 (1981); 
People v. Dentley
, 31 Ill. App. 3d 679 (1975)), the 
Visgar 
court relied on it to justify the continued power of a trial court to compel the physical examination of a complaining witness in a sex offense case.

The defendant in 
Visgar
, charged with the lewd fondling of a child, sought a physical examination to determine “whether [the complaining witness’] hymen was intact.” 
Visgar
, 120 Ill. App. 3d at 587. Reasoning that there was no allegation that the complaining witness was injured or that her vagina had been penetrated, the trial court found that an examination “would not be necessary for any purpose.” 
Visgar
, 120 Ill. App. 3d at 587. Thus, unlike the case at hand, the appellate court in 
Visgar
 was not faced with the decision of affirming a trial court’s decision to order the physical examination of a complaining witness.

2. 
Other Jurisdictions

Here, the appellate court turned to the other jurisdictions that utilize the “compelling need” test because neither 
Glover
 nor 
Visgar
 provided any guidance on how to implement the test. See, 
e.g.
, 
People v. Chard
, 808 P.2d 351 (Colo. 1991); 
Bartlett v. Hamwi
, 626 So. 2d 1040 (Fla. App. 1993); 
State v. D.R.H.
, 127 N.J. 249, 604 A.2d 89 (1992); 
State v. Garrett
, 384 N.W.2d 617 (Minn. App. 1986); 
State v. Ramos
, 553 A.2d 1059 (R.I. 1989); 
State v. Barone
, 852 S.W.2d 216 (Tenn. 1993); 
State v. Delaney
, 187 W. Va. 212, 417 S.E.2d 903 (1992). In 
Chard
, for example, the Colorado Supreme Court considered a defendant’s request for involuntary, independent psychological and physical examinations of a child who was an alleged victim of a sex offense. Relying on prior case law relating to involuntary psychological examinations, the court expressly adopted the “compelling need” test for involuntary physical examinations. 
Chard
, 808 P.2d at 353. 
Chard
 listed the factors to be considered in determining whether a “compelling need” is present. Those factors are: (1) the complainant’s age; (2) the remoteness in time of the alleged criminal incident to the proposed examination: (3) the degree of intrusiveness and humiliation associated with the procedure; (4) the potentially debilitating physical effects of such an examination; and (5) any other relevant considerations. 
Chard
, 808 P.2d at 355, citing 
Ramos
, 553 A.2d at 1062. In assessing those factors, the trial court must “ ‘ “balance the possible emotional trauma, embarrassment or intimidation to the complainant against the likelihood of the examination producing material, as distinguished from speculative, evidence.” ’ ” 
Chard
, 808 P.2d at 356, quoting 
People v. Estorga
, 612 P.2d 520, 523 (Colo. 1980), quoting 
People v. King
, 581 P.2d 739, 741 (Colo. 1978).

Like 
Chard
, the other jurisdictions that have adopted the “compelling need” test for involuntary physical examinations have relied, at least in part, on the court’s authority to order a psychological examination. See 
D.R.H.
, 127 N.J. at 257, 604 A.2d at 93 (noting, where defendant sought only a physical examination, the inherent power of the judiciary to order a witness to submit to a psychiatric or psychological examination); 
Ramos
, 553 A.2d at 1062 (noting, where defendant sought only a physical examination, that a number of courts have held that a trial court has discretionary power to order a witness in a criminal trial to submit to a psychiatric examination); 
Barone
, 852 S.W.2d at 221 (noting, where defendant sought only a physical examination, the trial judge has the inherent power to compel a psychiatric or psychological examination of the victim). In the other jurisdictions that hold a trial court may not order an unwilling witness to submit to a physical examination (see,
 e.g.
, 
State v. Hewett
, 93 N.C. App. 1, 9, 376 S.E.2d 467, 472 (1989); 
State ex rel. Wade v. Stephens
, 724 S.W.2d 141, 143-44 (Tex. Ct. App. 1987)), the courts likewise have no discretionary authority to order a complaining witness to submit to a mental examination (
State v. Clontz
, 305 N.C. App. 116, 121, 286 S.E.2d 793, 796 (1982); 
State ex rel. Holmes v. Lanford
, 764 S.W.2d 593, 594 (Tex. Ct. App. 1989)).

Similarly, in Illinois, a court has no authority to “order 
[the] 
mental examination of
 [a]
 sex victim.” 725 ILCS 5/115–7.1 (West 1998). When our decision in 
Glover
 was issued, section 115–7.1 was not yet in existence. See 725 ILCS 5/115–7.1 (West 1998) (added by Pub. Act 83–289, §1, eff. January 1, 1984). Accordingly, the legislature’s decision to prohibit trial courts from ordering the mental examination of complaining witnesses provides further support for our decision to likewise proscribe trial courts from ordering physical examinations.

3. 
Wheeler and Physical Examinations

Section 115–7.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115–7.1, now codified as 725 ILCS 5/115–7.1 (West 1998)) was at issue in 
People v. Wheeler
, 151 Ill. 2d 298 (1992), relied on by the trial court in this case. In 
Wheeler
, the defendant was charged with aggravated sexual assault. Before trial, he had learned that the State intended to introduce expert testimony that the alleged victim suffered from rape trauma syndrome. According to section 115–7.2 of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 115–7.2, now codified as 725 ILCS 5/115–7.2 (West 1998)), such testimony was admissible. The defendant moved the trial court to order the alleged victim to submit to a psychological examination by his own expert, but section 115–7.1 precluded such an order. At trial, the State called its expert, who had personally examined the alleged victim. The defendant appealed his conviction, arguing that sections 115–7.1 and 115–7.2, as applied, denied him due process of law. The appellate court disagreed and affirmed. 
People v. Wheeler
, 216 Ill. App. 3d 609 (1991). We granted the defendant’s subsequent leave to appeal and reversed. 
Wheeler
, 151 Ill. 2d at 313.

Initially, we noted that a defendant’s right to due process is the right to a fundamentally fair trial, including the right to present witnesses in his own behalf. 
Wheeler
, 151 Ill. 2d at 305, citing 
Chambers v. Mississippi
, 410 U.S. 284, 294, 35 L. Ed. 2d 297, 308, 93 S. Ct. 1038, 1045 (1973). We then described the legislative intent of the relevant sections of the Criminal Code:

“Section 115–7.1 was intended to protect sex-offense victims from the embarrassment of psychological examinations regarding the victim’s competency and credibility as a witness. The protection afforded by section 115–7.1 was necessary because, until recently, sex-offense victims were subjected to increased scrutiny by the courts. The rationale for this higher scrutiny was grounded on the often quoted maxim that rape ‘ “is an accusation easily made, hard to be proved and still harder to be defended by one ever so innocent.” ’ 
People v. Freeman
 (1910), 244 Ill. 590, 594, quoting 3 S. Greenleaf, Evidence §212 (15th ed. 1892).” 
Wheeler
, 151 Ill. 2d at 306.

We then recounted the unwarranted suspicion that victims of sexual assaults faced in criminal trials, as exemplified by passages found in Wigmore on Evidence (3A J. Wigmore, Evidence §924a, at 737 (Chadbourn rev. ed. 1970)). These passages recommended mandatory psychiatric evaluation for all complaining witnesses in sex offense cases to ascertain the victims’ “ ‘ “probable credibility” ’ ” and “to determine whether the victim ‘ “suffers from some mental or moral delusion or tendency *** causing distortion of the imagination in sex cases.” ’ ” 
Wheeler
, 151 Ill. 2d at 307, quoting 3A J. Wigmore, Evidence §924a, at 747 (Chadbourn rev. ed. 1970), quoting ABA Committee on the Improvement of the Law of Evidence (1938).

Next, we acknowledged that while Illinois wisely chose not to adopt the extreme position presented in Wigmore, our courts still retained the discretionary authority to order victims of sex offenses to undergo psychological examinations when supported by compelling reasons. 
Wheeler
, 151 Ill. 2d at 307, citing 
Glover
, 49 Ill. 2d at 82. Recognizing that our courts did not have a similar power with respect to victims of nonsexual offenses, we noted that in cases of sexual assault a victim’s competency and credibility was subject to attack based 
only
 on the nature of the offense. To eliminate this disparity, as well as the potential for embarrassment and intimidation of victims of sex offenses by defense counsel through the use of psychological evaluations focusing on the victims’ competency and credibility, the legislature enacted section 115–7.1. 
Wheeler
, 151 Ill. 2d at 307-08.

We then distinguished section 115–7.2 from section 115–7.1 because it did not relate to the victim’s competency and credibility. Rather, section 115–7.2 permitted the admission of expert testimony concerning the presence of rape trauma syndrome, a subcategory of post-traumatic stress syndrome. 
Wheeler
, 151 Ill. 2d at 308. “Unlike psychological evidence regarding the victim’s competency and credibility as a witness, evidence of rape trauma syndrome is substantive evidence that a sexual assault occurred” by showing that the complainant suffers from symptoms common among most sexual assault victims. 
Wheeler
, 151 Ill. 2d at 308.

After recognizing the value of a personal examination to a testifying expert, we stated that, although the defendant was free to call a nonexamining expert, the State’s ability to call an examining expert gave it “a clear advantage” in its effort to prove that the alleged victim suffered from rape trauma syndrome. 
Wheeler
, 151 Ill. 2d at 311. Thus, we held that, under those circumstances, the defendant’s trial was “fundamentally unfair.” 
Wheeler
, 151 Ill. 2d at 311.

This court further concluded that, unless the complainant consented to an examination by the defendant’s expert, the State was precluded from admitting an examining expert’s testimony that the victim had post-traumatic stress syndrome. 
Wheeler
, 151 Ill. 2d at 312. Even if the victim consented to the examination, we required the defense expert to be qualified by the court and that the examination “
be strictly limited to whether the victim has symptoms consistent with ‘any recognized and accepted form of post-traumatic stress syndrome
.’ (Emphasis added.) *** See 134 Ill. 2d R. 413(c).” 
Wheeler
, 151 Ill. 2d at 312, quoting Ill. Rev. Stat. 1989, ch. 38, par. 115–7.2, now codified as 725 ILCS 5/115–7.2 (West 1998).

We also emphasized the need to protect victims’ privacy in cases of sexual assault, as well as the concomitant right to refuse an examination for any reason. Nonetheless, we acknowledged the need for the victim’s right to be free of intrusion to be balanced against the defendant’s constitutional right to a fair trial. We concluded that if a victim refuses to undergo an examination, the State is precluded from introducing evidence of rape trauma syndrome from an examining expert. The State could, however, still introduce rape trauma evidence through the testimony of nonexamining experts. 
Wheeler
, 151 Ill. 2d at 312. This decision protected the victim’s rights by leaving the victim with the ultimate decision on whether to submit to an examination. It also ended the unacceptable and intolerable defense tactic of using psychological examinations as tools to harass, intimidate, and embarrass sexual assault victims. 
Wheeler
, 151 Ill. 2d at 313.

The same fundamental considerations and rights are at issue in cases where a defendant seeks an order to compel a physical examination. Victims of sexual assault should no more be subjected to physical examinations by experts proffered by the defense than they should be required to submit to psychological evaluations. The effects of both types of examinations can be intolerably harassing and intimidating and can cause further harm to the victim. We believe that this court struck the proper balance between a victim’s right to be free of intrusions and a defendant’s right to a fair trial, and that the 
Wheeler
 holding should be applicable in cases where defendants seek either psychological or physical examinations of victims in sexual offense cases.

B. Discovery Sanction

By our holding that the trial court could not order the physical examination of B.B., we have rendered the issue of the discovery sanction moot. See 
Chicago City Bank & Trust Co. v. Board of Education of the City of Chicago
, 386 Ill. 508 (1944) (a question is moot when it involves an issue that has ceased to exist). Accordingly, we vacate that portion of the appellate court and trial court decisions, disposing of defendant’s motion 
in limine
. On remand, the trial court should address the issue of what evidence can be produced by the State in light of the considerations espoused in 
Wheeler
. To this end, we note that at oral argument, defendant conceded it was error for the trial court to preclude the State from introducing nonexamining expert testimony. We further note that it would be error for the trial court to exclude expert evidence by the State that is objectively verifiable without an independent physical examination. 

For example, the affidavit of defendant’s expert only challenged the finding of a partial obliteration of B.B.’s hymen made by the State’s second expert. The affidavit made no mention of the independent finding of trauma made by the State’s first expert, 
i.e.
 “apparent scar tissue surrounding the vagina *** suggestive of previous trauma and raw edges coming together, suggestive of trauma.” If defendant continues to challenge only the conclusion of the State’s second expert, it would be improper for the trial court to exclude evidence produced by the State’s first expert.

III. CONCLUSION

For these reasons, we hold that a trial court cannot order a complaining witness in a sex offense case to submit to physical examination. To ensure a defendant’s constitutional rights to a fair trial is not compromised by the inability to obtain an independent physical examination, trial courts should exercise vigilance when rendering decisions on what evidence the State is allowed to produce. The appellate court decision is affirmed in part and vacated in part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

Appellate court judgment

affirmed in part and vacated in part;

cause remanded.

JUSTICE FREEMAN, specially concurring:

I join in the result reached by the majority because I believe defendant failed to demonstrate a compelling need for an independent physical examination of the victim. I cannot join the balance of the majority opinion, however, because the majority eschews the compelling need test and holds that a trial court has no jurisdiction to order the physical examination of a victim of a sex offense. While I recognize that, in so holding, the majority attempts to protect victims of sex offenses, I believe the majority needlessly hampers the State in its prosecution of such crimes and unwittingly places the victims of sex offenses in situations where they will feel compelled to comply with the very requests for physical examinations the majority seeks to deny.

My consideration of this issue necessarily begins with an examination of 
People v. Glover
, 49 Ill. 2d 78 (1971), the opinion the majority overrules. In 
Glover
, the defendant filed separate motions to require the victim of a sexual assault to submit to a psychiatric examination and an examination by an ophthalmologist. In the motion for the ophthalmological examination, the defendant alleged that the victim was the only eyewitness, it was dark at the time of the assault, and the examination was necessary to determine the victim’s ability to see and identify the defendant. In affirming the denial of the motion, this court observed: “With respect to the ophthalmological examination, although the court had jurisdiction to order it, the record reflects no compelling reason therefor and the denial of the motion was not an abuse of discretion.” 
Glover
, 49 Ill. 2d at 82.

The 
Glover
 court sought a balance between the rights of the victim of a crime and the rights of the defendant. The defendant’s request for a physical examination was to be granted only upon the showing of a compelling need. Further, the determination to grant or deny such a request was to rest within the sound discretion of the trial court. See 
Glover
, 49 Ill. 2d at 82. The court’s holding in 
Glover
 foreshadowed its holding in 
People v. Wheeler
, 151 Ill. 2d 298 (1992).

In 
Wheeler
, the court considered whether a defense expert should have been allowed to examine the victim to determine whether she suffered from rape trauma syndrome. The court first commented on the nature of the defendant’s rights at trial:

“A defendant’s right to due process is the right to a fundamentally fair trial, including the right to present witnesses in his own behalf. [Citation.] ‘Few rights are more fundamental than that of an accused to present witnesses in his own defense.’ [Citation.] In this case the trial court did not preclude defendant from presenting his own expert witness. Rather, because defendant’s expert was prevented from personally examining the victim the basis on which the expert could form an opinion was limited. In this manner the court’s order restricted the ability of defendant’s expert to form an opinion.” 
Wheeler
, 151 Ill. 2d at 305.

In counterbalance to the rights of the defendant, the court commented on the challenges faced by the victims of sex offenses in the prosecution of these crimes, particularly the attacks on the competency and credibility of the victims as witnesses. 
Wheeler
, 151 Ill. 2d at 306-07. The court noted that in enacting section 115–7.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115–7.1), the legislature “intended to eliminate the defense practice of intimidating sex-offense victims through psychological examinations focusing on their competency and credibility as witnesses.” 
Wheeler
, 151 Ill. 2d at 307.

The court drew a line, however, between psychological examinations used to attack the competency and credibility of victims of sex offenses and the examination the defendant sought to refute evidence of rape trauma syndrome:

“The issue addressed by section 115–7.2 [of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115–7.2)] is fundamentally distinguishable from the issue of the victim’s competency and credibility as a witness. Section 115–7.2 permits the use of expert testimony relating to the existence of post-traumatic stress syndrome. Rape trauma syndrome is the subcategory of post-traumatic stress syndrome which is common to victims of sexual assaults. Unlike psychological evidence regarding the victim’s competency and credibility as a witness, evidence of rape trauma syndrome is substantive evidence that a sexual assault occurred. By showing that a complainant suffers from psychological symptoms common to most victims of sexual assault, this evidence tends to support the proposition that the complainant was also the victim of a sexual assault.

Initially, the State argues that defendant has not presented a compelling reason for an examination of the victim. Thus, the State contends that defendant is not entitled to a court-ordered examination of the victim even without regard to section 115–7.1. The State’s argument ignores the impact of its rape trauma syndrome evidence. As previously stated, this evidence tends to prove that the victim was subjected to a sexual assault. The fact that the State is using evidence of rape trauma syndrome to prove that the victim was assaulted presents a compelling reason for defendant to examine the victim.

Defendant is not attempting to challenge the victim’s competency or credibility through a psychological examination. Instead, defendant is attempting to examine the victim for the purpose of challenging the State’s assertion that she suffers from rape trauma syndrome. ***

The State does not dispute that defendant was entitled to present evidence that C.K. did not suffer from rape trauma syndrome. Rather, the State argues that defendant’s expert witness could have formed an opinion on this subject by reviewing the various reports prepared in the case and observing the trial testimony of the victim and the State’s expert, Pamela Klein. Because defendant was not completely prevented from offering evidence that C.K. did not suffer from rape trauma syndrome, the State argues that application of sections 115–7.1 and 115–7.2 did not deprive defendant of a fair trial. This argument ignores the inherent qualitative differences between testimony from an examining expert and a nonexamining expert.

While it may be possible for an expert to form an opinion regarding rape trauma syndrome based only on a review of reports and trial testimony, this is clearly not the preferred method. An expert who has personally examined a victim is in a better position to render an opinion than is an expert who has not done so.” 
Wheeler
, 151 Ill. 2d at 308-09.

Lastly, the court observed that the need in a criminal trial for a complete presentation of the facts was hampered by the restriction on the defendant’s ability to rebut the State’s rape trauma syndrome evidence. 
Wheeler
, 151 Ill. 2d at 311. The court concluded:

“Because the State in this case had the exclusive right to examine C.K., the credibility of its expert was elevated above that of any nonexamining expert defendant could call. Thus, we find it is fundamentally unfair that the State was able to present the testimony of an examining expert but the defendant was limited to the testimony of a nonexamining expert. [Citation.]

We hold that unless the victim consents to an examination by an expert chosen by the defendant, the State may not introduce testimony from an examining expert that the victim of an alleged sexual assault suffers from a ‘recognized and accepted form of post-traumatic stress syndrome’ [citation]. Such an examination, if consented to, shall be conducted by an expert qualified by the court [citation], and shall be strictly limited to whether the victim has symptoms consistent with ‘any recognized and accepted form of post-traumatic stress syndrome.’ ” (Emphases omitted.) 
Wheeler
, 151 Ill. 2d at 311-12.

To summarize the holding in 
Wheeler
, the court recognized the need to protect the privacy of the alleged victim in a sex offense case. The court also recognized the defendant’s right to a fair trial and the disadvantage to the defense when its expert is not allowed to examine the victim. In the context of a psychological examination, the court found that evidence of rape trauma syndrome is substantive evidence that a sexual assault occurred and is in no manner equivalent to evidence regarding the victim’s competency and credibility as a witness. The court sought balance between the rights of the defendant and the alleged victim in allowing the trial court to order a psychological examination to rebut rape trauma syndrome evidence, but having the victim decide whether or not to comply with the order.

Of course the defendant must show a compelling reason for the examination in the first place (see 
Wheeler
, 151 Ill. 2d at 308; 
Glover
, 49 Ill. 2d at 82), and the examination must be performed by an expert qualified by the trial court (see 
Wheeler
, 151 Ill. 2d at 312). A showing of a compelling need minimizes the occasions upon which outside pressures may be brought to bear on the alleged victim to agree to an examination. In other words, the victim is not faced with a decision to comply or not comply with an order for an examination where the defendant has not shown a compelling need for the examination.

The compelling need test is followed by the majority of the courts in our sister jurisdictions. See 
State v. McIntosh
, 30 Kan. App. 2d ___, 58 P.3d 716 (2002) (collecting cases); 
State v. Barone
, 852 S.W.2d 216 (Tenn. 1993); 
State v. Delaney
, 187 W. Va. 212, 417 S.E.2d 903 (1992) (collecting cases);
 
People v. Chard
, 808 P.2d 351 (Colo. 1991)
. As in 
Wheeler
, 151 Ill. 2d 298, these courts recognize the defendant’s interest in a fair trial. 
Chard
, 808 P.2d at 353. These court also recognize the intrusive nature of a physical examination and the potential for trauma, embarrassment and intimidation to the alleged victim. 
Barone
, 852 S.W.2d at 222; 
Chard
, 808 P.2d at 355. The courts highlight, however, the differences in purpose between a psychological examination aimed at the credibility and competency of the alleged victim and a physical examination to establish a substantive defense to the charges against the defendant. 
Chard
, 808 P.2d at 354. Balancing the intrusion upon the victim and the defendant’s right to a fair trial, these courts conclude that a trial court may exercise its discretion to order an involuntary physical examination only when a defendant demonstrates a compelling need or reason for the examination. 
Barone
, 852 S.W.2d at 222; 
State v. Ramos
, 553 A.2d 1059, 1062 (R.I. 1989); 
Chard
, 808 P.2d at 356.

The factors to be considered in determining whether a defendant has shown a compelling need for an independent examination are the age of the alleged victim; the remoteness in time of the alleged criminal incident to the proposed examination; the degree of intrusiveness and humiliation associated with the procedure; the potentially debilitating physical effects of such an examination; the probative value of the examination to the issue before the court; and the evidence already available for the defendant’s use. 
McIntosh
, 30 Kan. App. 3d at ___, 58 P.3d at 726; 
Barone
, 852 S.W.2d at 222; 
Chard
, 808 P.2d at 355; 
Ramos
, 553 A.2d at 1062
. As noted in 
Ramos
, 553 A.2d at 1062, “[t]he practice of granting physical examinations of criminal witnesses must be approached with utmost judicial restraint and respect for an individual’s dignity.”

Applying these factors to the case at bar, I conclude that defendant has failed to show a compelling need for the physical examination. I note the victim is of an extremely tender age. She was a mere 20 months at the time of the alleged criminal conduct, and about three years old when defendant requested that the court order the State to produce her for an independent gynecological examination. Defendant’s request for the physical examination was remote in time from the alleged criminal conduct. As of the time of this writing, an additional 45 months have elapsed, making it even less likely that an examination would result in evidence probative to the defense. The proposed gynecological examination is extremely intrusive. Given the nature of the proposed examination and the victim’s yet tender age, there exists the possibility of debilitating physical and mental effects from such an examination. Lastly, there is evidence already available for defendant’s use, including 17 colposcopic photographs of the victim’s vaginal area.

The majority, however, eschews the compelling need test and holds that the trial court is without jurisdiction to order a physical examination of the alleged victim of a sex offense. Because this holding is contrary to the conclusion in 
Glover
 
that a trial court has jurisdiction to order a physical examination of a victim of a sex offense, the majority explicitly overrules 
Glover
. Further, although the majority purports to follow 
Wheeler
, in actuality, the majority overrules 
Wheeler
. The court in 
Wheeler
 specifically distinguished between mental examinations aimed at attacking the victim’s integrity and examinations focused upon obtaining substantive evidence to refute the allegation of sexual assault. See 
Wheeler
, 151 Ill. 2d at 308. In my estimation, a physical examination, as in the case at bar, is no doubt closer to the second type of mental examination than the first. The majority fails to provide a proper ground for differentiating between a physical examination and a mental examination relating to the existence of post-traumatic stress syndrome.

The majority cites 
State v. Hewett
, 93 N.C. App. 1, 376 S.E.2d 467 (1989), and 
State ex rel. Wade v. Stephens
, 724 S.W.2d 141 (Tex. Ct. App. 1987), in support of its holding that a trial court has no jurisdiction to order a physical examination of an alleged sex offense victim. I note that the jurisdictions cited are not as supportive as implied. In 
Hewett
, 93 N.C. App. 1, 376 S.E.2d 467, the appellate court considered whether the trial court properly denied the defendant’s motion for a physical examination of the sex offense victim. In doing so, the appellate court rejected the defendant’s argument that the bodies of the alleged victims were physical evidence susceptible to objective tests and examinations like any other physical evidence. 
Hewett
, 93 N.C. App. at 7, 376 S.E.2d at 471. The court then observed:

“[C]ourts are rightly solicitous when a human being’s privacy faces invasion. At the same time, we recognize that this defendant has been convicted of some of our most serious non-capital offenses, and our concern for his due process rights is, likewise, very strong. [Citation.]

We have carefully reviewed the record, and 
we do not find that defendant made a credible showing to the trial judge that the additional examinations he requested would have been probative
. The last alleged incidence of abuse was 29 March; the new examinations would have taken place some six months later. 
Defendant made no showing
 that dilations, in September, of less than four millimeters would demonstrate that no penetration had occurred in February and March. 
He made no showing
 that normal measurements would not have been the result of vaginal constriction rather than non-abuse.” (Emphases added.) 
Hewett
, 93 N.C. App. at 8, 376 S.E.2d at 471-72.

The court also observed that the defendant had made no showing that the new examinations were necessary. 
Hewett
, 93 N.C. App. at 8, 376 S.E.2d at 472. The court concluded:

“
We do not imply that a defendant charged with offenses such as these is precluded, in all cases, from receiving an independent medical examination of the alleged victim
. On appeal, both the State and defendant have focused on North Carolina cases in which criminal defendants have asked trial judges to compel witnesses to undergo psychiatric examinations. The law in this State is that a judge has no discretionary power to require an unwilling witness to submit to such an examination. [Citation.] 
In our view, a trial judge would have the discretionary power to permit a second physical examination of an alleged sexual-abuse victim if the defendant shows the court that the examination would be probative, that it is necessary to the defendant’s preparation of his defense, and if the victim or the victim’s guardian consents to the examination
. When, in a case such as this one, four life sentences are in part contingent on a distance of four millimeters, 
a defendant should not be absolutely foreclosed from having his own expert examine the alleged victim
. In this case, however, 
defendant failed to make a preliminary showing to the judge that the examinations would be probative and were necessary, and thus we overrule this assignment of error
.” (Emphases added and emphasis omitted.) 
Hewett
, 93 N.C. App. at 9, 376 S.E.2d at 472.

As the highlighted text in the foregoing discussion demonstrates, the 
Hewett
 court applied a form of the compelling need test to balance the interests of the alleged victims and the defendant’s right to due process.

In 
State ex rel. Wade v. Stephens
, 724 S.W.2d 141, 144 (Tex. Ct. App. 1987), the Court of Appeals of Texas, Fifth District, observed that article 39.14 of the Texas Code of Criminal Procedure (Tex. Code Crim. Proc. Ann. art. 39.14 (Vernon 1979)) is a comprehensive pretrial discovery statute which only allows discovery of tangible objects that are not privileged. The appellate court held that article 39.14 defines and limits the authority of a trial court to order discovery. Consequently, the appellate court required the trial court to set aside its order requiring the victim to submit to a physical examination. In 
State ex rel. Holmes v. Lanford
, 764 S.W.2d 593 (Tex. Ct. App. 1989), the Court of Appeals of Texas, Fourteenth District, agreed with the result of the 
Stephens
 decision, but not its reasoning. In holding that a trial court has no inherent authority to order the victim in a criminal case to undergo a psychological examination, the 
Lanford
 court recognized that “circumstances may arise under which a trial court could properly order discovery beyond that outlined in article 39.14.” 
Lanford
, 764 S.W.2d at 594. The 
Lanford
 court’s holding does not necessarily deprive the trial court of jurisdiction to order an examination. The 
Stephens
 decision, on the other hand, is based on the court’s construction of relevant Texas statutory authority.

Returning to the case at bar, I note there are unintended results attached to the majority’s holding. First, the holding needlessly hampers the State in its prosecution of crimes involving sexual offenses. Under the compelling need test, the defendant must show a compelling reason for the proposed examination. If the defendant meets this rather high burden, the trial court, in its discretion, orders the physical examination. If the alleged victim does not submit to the examination, the court considers what, if any, State evidence to exclude at trial. With the elimination of the compelling need test, the trial court automatically proceeds to a determination of what State evidence must be disallowed. See slip op. at ___. Moreover, the trial court must arrive at its determination without the detailed guidance offered by the compelling need factors.

Second, the alleged victim must decide to comply or not comply with the request for the examination without a prior determination that the defendant has shown a compelling need for the examination. Upon receipt of a request for a physical examination, the prosecuting attorney must approach the victim to determine whether the victim is willing to undergo the examination. Fully cognizant that the use of State expert testimony will be compromised if the victim does not agree with the defendant’s request, the prosecuting attorney may be tempted to apply pressure on the victim to comply with the request. Even if external pressures are not applied on the victim, the victim may yet feel the need to comply with the request in order to safeguard the prosecution’s case. In contrast, in the majority of sister jurisdictions, any pressure to comply with the defendant’s request for an independent examination would not come into play until the trial court had determined that the defendant had made a showing of a compelling need for the examination.

CONCLUSION

The need to protect the alleged victim in this case is only more compelling because of her tender age. Recognizing this, however, the alleged victim, and other victims of sexual offenses, will receive necessary protection through the judicious use of the compelling need test. This court need only invoke the test, provide guidance to the lower courts by adopting the factors noted above, and rest confident in the trial courts’ proper exercise of discretion. A physical examination should not be granted lightly. The majority chooses a different path, preferring to deny the trial courts jurisdiction to order an independent physical examination by a defense expert. While well intentioned, the majority’s holding is misguided. The accused, the victim, and the prosecution are the losers.

CHIEF JUSTICE McMORROW joins in this special concurrence.